ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

KATHERINE L. WAWRZYNIAK (CABN 252751)
Chief, Criminal Division

CHRISTOFFER LEE (CABN 280360)
DANIEL N. KASSABIAN (CABN 215249)
Assistant United States Attorneys

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7200
   FAX: (415) 436-7234
   christoffer.lee@usdoj.gov
   daniel.kassabian@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>HECTOR GARCIANAVA,<br><br>    Defendant. | Case No. CR 22-00308 YGR<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date: June 22, 2023<br>Time: 2:30 p.m.<br>Ctrm: 1, 4th Floor<br>Judge: The Honorable Yvonne Gonzalez Rogers |

## I.   SYNOPSIS

The United States respectfully submits this Sentencing Memorandum for defendant Hector Garcianava. He has pleaded guilty to a single count of violating 18 U.S.C. § 922(g)(1)—Felon in Possession of a Firearm and Ammunition—for possessing a loaded, .357 Magnum revolver in the course of selling it for $500. Per the guidelines, Mr. Garcianava's total offense level is 19 and his criminal history category is III, for a guidelines range of 37-46. Judiciary Sentencing INformation (JSIN) states that persons with the same offense and guidelines range on the average received 36 months imprisonment, with the median being 37 months. The U.S. Probation Office (USPO) recommends a downward variance to 24 months.

The government and Mr. Garcianava entered into a plea agreement under Fed. R. Crim. Proc. 11(c)(1)(B), wherein the government agreed to recommend a sentence of 30 months imprisonment pursuant to 18 U.S.C. § 3553(a).  The government does so here.

## II.    BACKGROUND ON DEFENDANT GARCIANAVA

Mr. Garcianava is 29 years-old.  He has three children, ages 5, 7, and 9.  Before the instant offense, Mr. Garcianava's most significant criminal conduct was on January 17, 2014, when he was 19 years-old.  He was arrested then, and remained in custody for over a year, until convicted on February 3, 2015 for:  (1) Assault with a Deadly Weapon with possible Great Bodily Injury (Cal. Penal Code § 245(a)(4)) with an enhancement for participating in a street gang (*id*. § 186.22(b)(1)(A)); and (2) Carrying a Concealed Firearm (*id*. § 25400(a)(1)), both felonies.  He effectively served a 2-year prison term locally with good time credits while detained—additional punishment of 2-4 years for gang involvement was apparently stricken by the state court in an act of leniency.

The conviction stemmed from an incident near Backesto Park, a residential area lined with bungalows just east of Japantown in San Jose.  On January 17, 2014 at 5 a.m., San Jose Police Department officers responded to several reports of gun shots in the area.  Officers later recovered seven used .40 caliber shell casings, and an empty Smith & Wesson magazine on the north sidewalk of Empire Street that lines the park.  One witness (50-65 years old) told police that he was on his morning walk in Backesto Park when he saw 4 males after hearing gun shots.  One of the males flashed a gun in the his waistband at the witness and said "What do you want?" to which the witness responded "What are you going to shoot me?  I'm a grandpa."  The witness later identified the person flashing the gun—it was not Mr. Garcianava.  The investigation led to a car stop of silver Dodge sedan driven by Mr. Garcianava (registered to his sister).  The car had three other occupants, including a juvenile, and a stolen and loaded Smith & Wesson .40 caliber pistol under one of the seats.

While on parole following the above-noted conviction, Mr. Garcianava was arrested on July 7, 2015 and then convicted on July 10, 2015 for Obstructing a Peace Officer (*id*. § 148(a)(1)), a misdemeanor, for 12 days in county jail.

## III.    OFFENSE CONDUCT

On May 29, 2018, at approximately, 11:59 am, Mr. Garcianava called J.A. via phone regarding



the sale of a firearm and ammunition. During this call, J.A. checked his "bank account" and told Mr. Garcianava that he had "580" in it. Mr. Garcianava then agreed to sell his silver Ruger .357 Magnum revolver with ammunition to J.A. for $500.

On May 31, 2018, after retrieving my Ruger .357 Magnum revolver and ammunition, Mr. Garcianava arranged to meet with J.A. to sell the firearm and ammunition to him. Mr. Garcianava met with J.A. in front of Mr. Garcianava's residence in San Jose, California, in the Northern District of California. J.A. and Mr. Garcianava stood in front of Mr. Garcianava's black Mercedes Benz sedan, with the hood opened, in the parking lot of my residence. Mr. Garcianava then gave J.A. the Ruger .357 Magnum revolver and .357 Hornady brand ammunition in it to J.A. in exchange for $500 cash. J.A. then left Mr. Garcianava's apartment complex with the firearm and ammunition.

Unbeknownst to Mr. Garcianava at the time, law enforcement agents were monitoring the transaction and observed J.A. leave with the firearm and ammunition. On June 1, 2018, Mr. Garcianava spoke with J.A. via telephone and learned that J.A. had been pulled over by law enforcement shortly after Mr. Garcianava sold him the firearm and ammunition. Mr. Garcianava learned that J.A. had been arrested for unlawfully possessing the firearm. During that call, J.A. relayed to Mr. Garcianava that the gun was stolen and that Mr. Garcianava should have warned him. Mr. Garcianava replied that "they don't track fool," "there's no such thing fool. Relax," to reassure J.A. that stolen firearms are not tracked because there is no government/law enforcement system or method to do so.

## IV. MEMBERSHIP IN THE SAN JOSE GRANDE STREET GANG

During the time of the offense conduct, Mr. Garcianava was a member San Jose Grande (SJG), a Norteño street gang formed in San Jose, California, in the 1990s, which is comprised of dozens of members operating primarily in and around San Jose, including the area around Backesto Park, as well as in custodial facilities. SJG members commit a wide variety of crimes for the benefit of SJG, as well as for the benefit of Norteños and the Nuestra Familia criminal organization generally. These crimes include, but are not limited to, murder, conspiracy to commit and attempted murder, robbery,

obstruction of justice, witness intimation, distribution of narcotics, and various firearms offenses. *See, e.g.*, N.D. Cal. Case No. CR-21-00312 EJD (indictment against six other SJG members, but not Mr. Garcianava, alleging a pattern of racketeering activity consisting of offenses involving (1) the distribution of controlled substances, (2) acts involving robbery; and (3) acts involving murder).

Mr. Garcianava is a high-ranking SJG member—a leader that has held and has run SJG gang meetings, and a channel of communication between SJG and the NF prison gang—based on wiretaps on his cell phone and information developed during the investigation. Mr. Garcianava has tattoos consistent with SJG membership, including "San Jo" on his back, "IV" (i.e., the roman numeral four signifying affiliation with Norteños) on his abdomen, 4 dots on his face, "ES" (indicating "east side" of San Jose) on his left triceps, and "S" and "J" (for San Jose) near his ears.

During an August 13, 2017 meeting of SJG members, for example, Mr. Garcianava called the meeting to order, took a roll call, and led discussion of various topics. Another SJG member said that the group had to contribute money to SJG so that the gang could "start investing into weaponry, guns, bullets, everything." Mr. Garcianava added, "I'm talking about large amounts of weapons that we can transport out of state type shit. You gotta network. Go to different countries, cities, states." Mr. Garcianava also said, "if you're not either going to school or working, you better be out here putting in some fucking work gang banging." Mr. Garcianava told SJG members that they were permitted to assault an individual who failed to pay another SJG member for drug debts owed: "whenever you see him or whoever you are with, you have the right to beat his ass."

Additionally, recorded communications show Mr. Garcianava's leadership role and willingness to use violence to advance his personal goals and the interests of SJG. For example, in May 2018, Mr. Garcianava was intercepted discussing distribution of narcotics to SJG gang members and associates in the county jail. When Mr. Garcianava learned that an associate was reporting to jail, he made arrangements to furnish the individual with narcotics to take to jail. He and the associate discussed using gloves or saran wrap; it is not unusual for gang members who self-surrender to county jails to smuggle narcotics in body cavities into the jail to provide these narcotics to other gang members in custody for subsequent use or sale, depending on the drug. Moreover, Mr. Garcianava relayed in another contemporaneous call to another individual: that he (Garcianava) "just bought an ounce… I'm

gonna break this shit down real good.  I'm gonna give it to [another party] in a little bit.  If he's going in, I want some of [my] boys to have some, you know."

## V. SENTENCING RECOMMENDATION

The government recommends that the Court sentence Mr. Garcianava to 30 months imprisonment.  Considering the factors set forth in 18 U.S.C. § 3553(a), the government believes this proposed sentence is sufficient, but not greater than necessary, to fulfill the needs of sentencing.  First, Mr. Garcianava's crime is serious: he sold a loaded firearm while being a felon.  18 U.S.C. § 3553(a)(2)(A).  And while that happened in 2018, the recommendation reflects Mr. Garcianava's gang membership in SJG at the time, which goes back to age 19, when he first spent over a year in jail to receive credit for a two-year prison sentence.  Id. § 3553(a)(1).  Given that the federal prison system does not provide the level of good time credits as the California system, the government's recommendation will result in graduated sentencing of twice the amount of time as Mr. Garcianava's prior longest sentence.  The recommended incarceration should serve a deterrent effect not only on Mr. Garcianava, but also on others who may view their prohibition on firearms possession as a mere suggestion that has no real consequences in state court.  Id. § 3553(a)(2)(B).  The government also is mindful of Mr. Garcianava's circumstances and characteristics, which include poor judgment by participating in gang activity while being the father of three young children.  Id. § 3553(a)(1).  The Court should impose a sentence with sufficient deterrence so that Mr. Garcianava feels no compulsion to return to gang life, assuming he has, in fact, abandoned it given his current performance on pretrial supervised release without issue.

DATED:  June 15, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

_/s/_
DANIEL N. KASSABIAN
Assistant United States Attorney
2086-7021-4912, v. 1